## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

331 FREEPORT PARTNERS, LLC,       CASE NO. 3:25-cv-00863-TKW-ZCB
a Florida Limited Liability Company,

      Plaintiff,

v.

331 PARTNERS, LLC,
a Georgia Limited Liability Company,

      Defendant.

_____/

## ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

Defendant 331 Partners, LLC ("Buyer"), by and through undersigned counsel,

files this Answer, Affirmative Defenses, and Counterclaim stating as follows.

### JURISDICTION AND VENUE

1.     Admitted for jurisdictional purposes; otherwise denied.

2.     Admitted for venue purposes; otherwise denied.

### FACTUAL ALLEGATIONS

3.     Admitted.

4.     Admitted.

5.     Admitted.

6.     Admitted.

18745334.1

7.     Admitted that the language quoted appears in the Order referenced, as does other language which is omitted from this allegation.

8.     Admitted.

9.     Admitted.

10.    Admitted that Plaintiff sent a letter that has been described as a "trigger notice." Although Buyer denied that the trigger notice was effective, Buyer acknowledges that the Court has already determined that the trigger notice was properly sent.

11.    Admitted.

12.    Admitted.

13.    Admitted that the language appears in the motion referenced. However, Buyer has been deprived of its opportunity for the contractually agreed upon post-inspection period by virtue of Plaintiff's conduct, including its inconsistent litigation positions.

14.    Admitted that the language appears in the transcript referenced. However, Buyer has been deprived of its opportunity for the contractually-agreed upon post-inspection period by virtue of Plaintiff's conduct, including its inconsistent litigation positions.

15.     Denied as stated. The language quoted was one interpretation of the Contract offered by counsel for the Buyer. Buyer's counsel's full explanation is as follows:

> Without a doubt, Your Honor. There's two prongs to that. Number 1, there's the trigger notice. So there is absolutely the ability to put the endpoint from the defendant.
>
> And then Number 2, even if not, so if the Court set aside the trigger notice and just read it completely out of the contract, then it just becomes a fact issue for what's a reasonable determination of time at which point the witnesses have testified consistently at least two to three years.

First Dec. Action at Dkt. No. 65-2 at 22:2-22:10.

16.     Admitted.

17.     Denied because the quote language is incomplete. The Contract provides that, "in no event shall the 1st scheduled closing extend beyond a period that exceeds Twenty-Four (24) months from the expiration of inspection Period, except and unless, the City, within thirty (30) days of the expiration of the 24 month deadline, confirms to Buyer and/or Seller that City's delivery of adequate capacity of water and sewer to the property is under construction and will be available to Property within three (3) more months, then Buyer and Seller both agree to extent the closing date to the date water and sewer is brought to property by City."

18.     Admitted that the quote language appeared in the Transcript. All other allegations are denied.

19.     Denied.

20.    Denied.

21.    Admitted that the letter was sent and that as of that date, Buyer viewed the Outside Closing Date as February 5, 2027. Subsequent to that letter, Seller informed Buyer of its position that the Outside Closing Date was July 17, 2025, which caused Buyer to be uncertain as to its rights and rendered any performance by it potentially futile. As a result, Buyer no longer contends that the Outside Closing Date is February 5, 2027. Instead, Buyer contends that it is entitled to a contiguous, uninterrupted 24-month post-inspection period, such that the Outside Closing Date should be on a date that is two years after the Court's entry of an order denying Plaintiff the declaratory relief that it seeks in this case and granting Buyer the relief that it seeks in its counterclaim.

22.    Admitted that Seller sent the letter referenced. Buyer denies the assertions set forth in that letter.

23.    Admitted that Seller sent the letter referenced. Buyer denies the assertions set forth in that letter.

24.    Denied.

25.    Denied.

26.    Denied.

27.    Denied.

## COUNT I:
## <u>DECLARATORY RELIEF</u>

28.    Buyer repeats allegations 1 through 27 above.

29.    Admitted.

30.    Admitted that Seller so maintains. All other allegations are denied.

31.    Denied. Buyer previously contended that the Outside Closing Date was February 5, 2027, measured as 24-months after the date the Court entered its Order on Cross-Motions for Summary Judgment. However, since that contention, Seller, through its conduct and assertions, has frustrated Buyer's efforts under the Contract and deprived it of the post-inspection period to which it is entitled. Accordingly, Buyer contends that it is entitled to a contiguous, uninterrupted 24-month post-inspection period beginning from the date that the Court enters such an order.

32.    Admitted.

33.    Admitted.

34.    Buyer is without information sufficient to admit or deny the allegations of this paragraph which therefore stand denied.

35.    Admitted.

36.    Admitted.

WHEREFORE, Buyer denies that Seller is entitled to any of the relief it seeks in the unnumbered paragraph following paragraph 36 of its Complaint.

Buyer further denies all allegations of the Complaint to which no specific response is set forth above.

## AFFIRMATIVE DEFENSES

For its Affirmative Defenses, Defendant states as follows.

### First Defense

Plaintiff's claim is barred by the doctrines of waiver or estoppel. For years, Plaintiff denied the enforceability of the Contract or its obligations thereunder, rendering any performance by Defendant futile and potentially wasteful. Yet Plaintiff's Complaint alleges that Defendant should have been working towards closing notwithstanding Plaintiff's prior litigation position. Plaintiff's claim is therefore barred by estoppel and/or waiver.

### Second Defense

The Plaintiff is seeking a Declaratory Judgment, an equitable remedy at law, with unclean hands. Plaintiff failed to abide by the terms of the purported contract for years. An equitable remedy is inappropriate for a Plaintiff with unclean hands.

### Third Defense

Pending further investigation and discovery, this Defendant reserves the right to assert all affirmative defenses available under Florida Law.

6

## COUNTERCLAIM

For its counterclaim against Plaintiff 331 Partners, LLC ("Seller"), Defendant 331 Freeport Partners, LLC ("Buyer") states as follows.

### JURISDICTION AND VENUE

1.      This is a counterclaim for declaratory judgment pursuant to 28 U.S.C. § 2201(a) and Rule 57 of the Federal Rules of Civil Procedure, involving damages in excess of the jurisdictional limits of $75,000, exclusive of interests, costs, and attorneys' fees.

2.      Buyer seeks a declaration under 28 U.S.C. § 2201 of certain rights, duties, and liabilities of Buyer and Seller under a duly executed Vacant Land Contract (the "Contract") relating to the sale of real estate located in Walton County, Florida.

3.      Jurisdiction and venue are also proper in this Court pursuant to 28 U.S.C. 1367, because Buyer's counterclaim forms part of the same case or controversy as Seller's complaint.

### FACTUAL BACKGROUND

4.      Buyer and Seller are parties to the Contract. The Contract provides Buyer with the right to purchase approximately 1,034.89 acres of real estate along Highway 331 in Freeport, Florida (the "Property"). A copy of the Contract is attached to Plaintiff's Complaint as Exhibit 1. Dkt. No. 1-1.

5.      The Property is more particularly described by the Legal Description of Property attached hereto as Exhibit "1."

6.      Seller signed the Contract on July 2, 2021.

7.       Buyer signed the Contract on July 6, 2021.

8.      Buyer deposited the required $50,000 earnest money with the escrow holder on July 9, 2021.

9.      Buyer and Seller agreed that the purchase price of the Property shall be determined as either: (*a*) a price set for a single closing purchase of the entire Property at the initial closing ("One Closing Price"); or (*b*) a price set for up to four (4) installment purchases ("Installment Price") as set forth under the terms of the Contract and the exhibits thereto.

10.     Both the purchase price of the Property and the value of the Property exceed $75,000.

11.     The Contract provides Buyer with a period of due diligence to inspect the Property (the "Inspection Period") to determine the Property's suitability—in Buyer's sole discretion—until the later of (*a*) 120 days from the Effective Date of the Contract, that is, from July 6, 2021, or (*b*) the date on which Buyer received certain approvals from the City of Freeport, Florida (the "City"),  as to various development plans associated with the Property (the "Approvals").

12.     The Contract defines the Approvals as being (*a*) approvals from the City, Walton County, or such other governmental authority with appropriate jurisdiction, of the buyer's master development plan for the Property; or (*b*) final approval from the City of Buyer's master development plan together with City-approved concurrency availability and an approved Chapter 163 Developer's Agreement with the City.

13.     The Contract provides that Seller may force Buyer to decide whether to accept the Contract under Section 4 of Exhibit A to the Contract, which affords Defendant the option at certain times and under certain circumstances to require Buyer to determine whether to proceed with the Contract and make the Additional Earnest Money Deposit or to terminate the Contract without waiting for the City's Approval (the "Trigger Notice").

14.     The Contract further states, "In the event after One Hundred Fifty (150) days after the Effective Date the Seller determines in its reasonable discretion that (i) the City Approval is not available within the next ninety (90) days or will not be obtainable by the parties after diligent application, or (ii) water/sewer availability is not available or obtainable by the parties for the Property (or, if the parties agree in writing, the portion of the Property for the first Designated Takedown by the first Designated Takedown date), then Seller may elect to require Buyer to make its determination within the Inspection Period whether to proceed with the Agreement

and make the Additional Earnest Money Deposit whereupon the Earnest Money would be at risk subject to the terms and conditions herein, or to terminate the Agreement, without waiting for the City Approval, whereupon Buyer must make such election within thirty (30) days of notice or Seller may terminate the Agreement of right."

15.    The same Section 4 requires that Buyer must "make such election within thirty (30) days of notice or Seller may terminate the Agreement of Right."

16.    In an apparent attempt to send a Trigger Notice, Seller sent an email to Buyer on June 15, 2023, announcing that the City's approval of Buyer's development plan was not available within the next 90 days and demanding Buyer's election to make its determination whether to proceed with the Contract and made an additional earnest money deposit under the Contract's terms.

17.    Buyer provided timely notice of its intent to proceed with the Agreement on July 17, 2023 (the "Trigger Response").

18.    Buyer also deposited an additional $200,000 earnest money deposit with the designated escrow holder on August 14, 2023.

19.    Notwithstanding Buyer's election to proceed with the Contract pursuant to the Trigger Response, Seller informed Buyer that it would no longer honor the terms and conditions of the Contract but would instead consider the Contract terminated.

20.    Accordingly, Buyer filed an action for declaratory relief, in the United States District Court for the Northern District of Florida, Case No.: 3:23-cv-24769-TKW-ZCB, on December 27, 2023 (the "First Dec Action"). Therein, Buyer sought a declaration that the Contract was valid and enforceable, and remained an executory contract.

21.    In response, Seller answered and asserted that the Contract was invalid and unenforceable because 1) it was illusory; 2) it was so ambiguous as to lack essential terms; and 3) it lacked mutuality. First Dec. Action at Dkt. No. 10, p. 5-6.

22.    Throughout the fourteen (14) month pendency of the First Dec. Action, Seller steadfastly maintained that the Contract was not valid or enforceable.

23.    Both parties filed Motions for Summary Judgment in the First Dec Action. In Seller's Motion, it argued that the Contract was not enforceable because it was too vague, lacked essential terms, and lacked mutuality. Dkt. No. 43 in First Dec. Action at p. 4.

24.    In its Order on the Motions for Summary Judgment, the Court ruled in favor of Buyer and determined that "[t]he contract between the parties was valid from the outset and is still in effect." First Dec. Action Dkt. No. 53.

25.    Although the Court resolved the issue of validity of the Contract, the deadline for the closing(s) contemplated by the Contract remain unresolved and is the subject of Seller's Complaint.

37.     The Contract provides that "in no event shall the 1st scheduled closing extend beyond a period that exceeds Twenty-Four (24) months from the expiration of inspection Period, except and unless, the City, within thirty (30) days of the expiration of the 24 month deadline, confirms to Buyer and/or Seller that City's delivery of adequate capacity of water and sewer to the property is under construction and will be available to Property within three (3) more months, then Buyer and Seller both agree to extent the closing date to the date water and sewer is brought to property by City." Dkt. No. 1-1, Ex. A at ¶ 5.

26.     Thus, this "Outside Closing Date," as Seller refers to it, must occur within 24 months after expiration of the inspection period (the "Post-Inspection Period").

27.     The Seller contends that the Trigger Notice terminated the inspection period and began the Post-Inspection Period.

28.     Specifically, Seller contends that the 24-month Post-Inspection Period has been running continuously since July 17, 2025, and that it will end on July 17, 2025.

29.     However, Seller's conduct, including but not limited to its arguments both inside and outside of litigation that the Contract was unenforceable, have deprived Buyer of contiguous, uninterrupted 24-month Post-Inspection Period to which it is entitled. Such conduct includes, but is not limited to, the following:

12

a. On July 17, 2023 (the same day as Buyer's Election to Proceed), Seller wrote an email to Buyer stating that Seller would "terminate Agreement effective immediately." First Dec. Action at Dkt. No. 39-12, p.1-2.

b. On August 15, 2023, Seller again informed Buyer that it considered the contract terminated. First Dec. Action at Dkt. No. 39-13, p. 2. *See also* First Dec. Action at Dkt. No. 39-2, p. 105:9–106:1.

c. On December 1, 2023, Seller sent Buyer a letter reiterating Seller's position that the "Contract has been terminated." Moreover, Seller demanded Buyer cease and desist from representing to any third parties that it had a contract to purchase the property at issue. First Dec. Action at Dkt. No. 39-15.

d. Buyer then commenced the First Dec. Action on December 27, 2023, seeking a declaration that the Contract was valid and in effect. Throughout that litigation until its resolution on February 5, 2025, Seller argued that the Contract was unenforceable and/or had been terminated.

30. Closing the transaction contemplated by the Contract requires a significant amount of work and expense on the part of Buyer. Seller's conduct meant that Buyer could not undertake that work and that any such work could be rendered futile.

13

31.    As a result, Seller is estopped from asserting that the Post-Inspection Period was running throughout the pendency of the First Dec. Action.

32.    After the Court's Order on the Motions for Summary Judgment in the First Dec. Action, Buyer informed Seller that it was entitled to a 24-month uninterrupted, contiguous Post-Inspection Period via letter dated April 21, 2025. Ex. 4 to Seller's Complaint, Dkt. No. 1-4.

33.    In response, on April 24, 2025, Seller sent a letter to Buyer setting forth Seller's position that closing must occur by July 17, 2025, notwithstanding Seller's prior contradictory conduct. Ex. 5 to Seller's Complaint, Dkt. No. 1-5.

34.    Buyer is entitled to an uninterrupted, contiguous 24-month Post-Inspection Period, but Seller has deprived Buyer of that right by virtue of its position in connection with the First Dec. Action and in its letter dated April 24, 2025.

## COUNT I
### DECLARATORY RELIEF

35.    Buyer re-alleges paragraphs 1 through 34 above as if stated in full herein.

36.    Buyer seeks a declaration from this Court that Seller is obligated to abide by the terms and conditions of the Contract, including but not limited to affording Buyer an uninterrupted, contiguous 24-month Post-Inspection Period.

37.    As a result of Seller's conduct alleged herein, Seller is estopped from asserting that the 24-month Post-Inspection Period terminates on July 17, 2025.

38.     Whether under the Contract and/or due to equitable principles including estoppel, Buyer is entitled to a 24-month Post-Inspection Period beginning on the date of the Court's entry of an order to this effect.

39.     Alternatively, Buyer is entitled to a declaration setting the expiration of the Post-Inspection Period on a date certain after taking into account Seller's conduct and equitable considerations of estoppel.

40.     Buyer seeks such a declaration to ensure that Seller cannot deprive Buyer of its rights again through contradictory positions or conduct.

41.     Without certainty as the expiration of the Post-Inspection Period – and therefore the date of the Outside Closing – Buyer's contractual rights under the Contract are diminished or extinguished.

42.     This demand for declaratory relief is not made for the purpose of seeking a legal opinion, but is needed to resolve an existing dispute that creates doubt between the parties as to their legal rights, responsibilities and obligations.

43.     All conditions precedent to the initiation and maintenance of this action have been complied with, have occurred, or have been waived.

44.     An adequate remedy at law does not exist.

37.     Buyer has retained the law firm of Morris, Manning & Martin, LLP to protect Buyer's interests related to the Contract and Buyer is obligated to pay Morris, Manning & Martin, LLP reasonable attorneys' fees for its professional services.

## DEMAND FOR RELIEF

WHEREFORE, Buyer respectfully requests that this Court adjudicate and decree as follows:

A.   That the Post-Inspection Period does not expire on, and the Outside Closing Date is not, July 17, 2025;

B.   That either (i) Buyer is entitled to a contiguous, uninterrupted 24-month Post-Inspection Period, which will not expire until 24-months after entry of the Court's order to such effect, or (ii) that the Post-Inspection will not expire until another date certain set by the Court after taking into account equitable considerations of estoppel;

C.   That the parties are obligated to abide by the terms and conditions of the Contract, including but not limited to allowing Buyer the right to exercise its option to purchase the Property under the terms and conditions of the Contract;

D.   That this Court award Buyer its taxable costs and reasonable attorneys' fees; and,

F.   Grant Buyer such further relief as this Court deems just and proper.

Dated this 16th day of July, 2025.

/s/  *Stephen M. Vaughn*
STEPHEN M. VAUGHN
Georgia Bar No. 219482
Admitted to practice in the NDFL
MORRIS, MANNING & MARTIN, LLP
3343 Peachtree Rd. NE, Suite 1600
Atlanta, Georgia 30326

## <u>CERTIFICATE OF SERVICE</u>

I certify that this document has been filed via CM/ECF for electronic

distribution to the following counsel on July 16, 2025:

ROBERT M. STEIN
servicerobertstein@rvmrlaw.com
LAUREN K. WHALEY
servicelaurenwhaley@rvmrlaw.com
RENNERT VOGEL MANDLER & RODRIGUEZ, P.A.
*Attorneys for 331 Freeport Partners, LLC*
Miami Tower, Suite 2900
100 S.E. Second Street
Miami, Florida 33131
Telephone (305) 577-4177

/s/     *Stephen M. Vaughn*
STEPHEN M. VAUGHN
Georgia Bar No. 219482
Admitted to practice in the NDFL