## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

331 FREEPORT PARTNERS, LLC,  CASE NO. 3:25-cv-00863-TKW-ZCB
a Florida Limited Liability Company,

  Plaintiff,

v.

331 PARTNERS, LLC,
a Georgia Limited Liability Company,

  Defendant.

_____/

## AMENDED ANSWER, AFFIRMATIVE
## DEFENSES, AND COUNTERCLAIM

  Defendant 331 Partners, LLC ("Buyer"), by and through undersigned counsel,

files this Answer, Affirmative Defenses, and Counterclaim stating as follows.

### JURISDICTION AND VENUE

  1.  Admitted for jurisdictional purposes; otherwise denied.

  2.  Admitted for venue purposes; otherwise denied.

  3.  Admitted that Buyer is unaware of any conditions precedent to the

filing of the complaint; otherwise denied.

  4.  Buyer lacks knowledge or information sufficient to form a belief

about the truth of the allegations of this paragraph, which therefore stand denied.

### FACTUAL ALLEGATIONS

  5.  Admitted.

18931628.3

6.      Admitted.

7.      Admitted.

8.      Admitted.

9.      Admitted that the language quoted appears in the Order referenced, as does other language which is omitted from this allegation.

10.     Admitted.

11.     Admitted.

12.     Admitted.

13.     Admitted that Seller sent a letter that has been described as a "trigger notice." Although Buyer denied that the trigger notice was effective, Buyer acknowledges that the Court has already determined that the trigger notice was properly sent.

14.     Admitted.

15.     Admitted.

16.     Admitted that the language appears in the motion referenced. However, Buyer has been deprived of its opportunity for the contractually agreed upon post-inspection period by virtue of Seller's conduct, including its inconsistent litigation positions, interference with Seller's performance under the Contract, and other dilatory tactics.

17.    Admitted that the quoted language appears in the transcript referenced. However, Buyer has been deprived of its opportunity for the contractually agreed upon post-inspection period by virtue of Seller's conduct, including its inconsistent litigation positions, interference with Seller's performance under the Contract, and other dilatory tactics.

18.    Denied as stated. The quoted language was one interpretation of the Contract offered by counsel for the Buyer. Buyer's counsel's full explanation is as follows:

> Without a doubt, Your Honor. There's two prongs to that. Number 1, there's the trigger notice. So there is absolutely the ability to put the endpoint from the defendant.
>
> And then Number 2, even if not, so if the Court set aside the trigger notice and just read it completely out of the contract, then it just becomes a fact issue for what's a reasonable determination of time at which point the witnesses have testified consistently at least two to three years.

First Dec. Action at Dkt. No. 65-2 at 22:2-22:10.

19.    Admitted.

20.    Denied. The quoted language is incomplete. The Contract provides that, "in no event shall the 1st scheduled closing extend beyond a period that exceeds Twenty-Four (24) months from the expiration of inspection Period, except and unless, the City, within thirty (30) days of the expiration of the 24 month deadline, confirms to Buyer and/or Seller that City's delivery of adequate capacity of water and sewer to the property is under construction and will be available to Property

3

within three (3) more months, then Buyer and Seller both agree to extent the closing date to the date water and sewer is brought to property by City."

21.    Admitted that the quoted language appeared in the Transcript. All other allegations are denied.

22.    Denied.

23.    Denied.

24.    Admitted that the letter was sent and that as of that date, the Outside Closing Date was February 5, 2027. Subsequent to that letter, however, Seller took the position that the Outside Closing Date was July 17, 2025 and engaged in other conduct designed to deprive Buyer of its rights under the Contract.

25.    Admitted that Seller sent the letter referenced. Buyer denies the assertions set forth in that letter.

26.    Admitted that Seller sent the letter referenced. Buyer denies the assertions set forth in that letter.

27.    Denied.

28.    Denied.

29.    Denied.

30.    Admitted.

31.    Denied. Subsequent to that letter, Seller took the position that the Outside Closing Date was July 17, 2025 and engaged in other conduct designed to deprive Buyer of its rights under the Contract

32.    Denied.

33.    Denied.

34.    Admitted that the quoted language appears in the transcript referenced; otherwise, denied.

35.    Denied.

36.    Denied.

37.    Denied.

38.    Denied.

39.    Denied.

40.    Denied.

## COUNT I:
## DECLARATORY RELIEF

41.    Buyer repeats allegations 1 through 40 above.

42.    Admitted.

43.    Admitted that this paragraph recites the substance of the relief sought by Seller; denied that Seller is entitled to that relief.

44.    Denied in part. Buyer previously contended that the Outside Closing Date was February 5, 2027, measured as 24-months after the date the Court entered

its Order on Cross-Motions for Summary Judgment. However, since that contention,

Seller, through its conduct and assertions, has frustrated Buyer's efforts under the

Contract and deprived it of the post-inspection period to which it is entitled through

continued inconsistent litigation positions, interference with Seller's performance

under the Contract, and dilatory tactics. The substance of Buyer's position is further

set forth in its Counterclaims for Declaratory Relief, below.

45.    Admitted.

46.    Admitted.

47.    Buyer is without information sufficient to admit or deny the allegations

of this paragraph which therefore stand denied.

48.    Admitted.

49.    Admitted.

WHEREFORE, Buyer denies that Seller is entitled to any of the relief it seeks

in the unnumbered paragraph following paragraph 49 of its Complaint.

## COUNT II:
## BREACH OF CONTRACT

50.    Buyer repeats allegations 1 through 40 above.

51.    Admitted.

52.    Admitted.

53.    Denied.

54.    Denied.

55.     As stated, admitted. As intended to be stated, denied.

WHEREFORE, Buyer denies that Seller is entitled to any of the relief it seeks in the unnumbered paragraph following paragraph 55 of its Complaint.

## AFFIRMATIVE DEFENSES

For its Affirmative Defenses, Defendant states as follows.

### First Defense

Seller's claim is barred by the doctrines of waiver or estoppel. For years, Seller denied the enforceability of the Contract or its obligations thereunder, rendering any performance by Defendant futile and potentially wasteful. Yet Seller's Complaint alleges that Defendant should have been working towards closing notwithstanding Seller's prior litigation position. Seller's claim is therefore barred by estoppel and/or waiver.

### Second Defense

Seller is seeking a Declaratory Judgment, an equitable remedy at law, with unclean hands. Seller failed to abide by the terms of the purported contract for years. An equitable remedy is inappropriate for a Seller with unclean hands.

### Third Defense

Pending further investigation and discovery, Buyer reserves the right to assert all affirmative defenses available under Florida Law.

# COUNTERCLAIM

For its counterclaim against Plaintiff 331 Partners, LLC ("Seller"), Defendant 331 Freeport Partners, LLC ("Buyer") states as follows.

## JURISDICTION AND VENUE

1.   This is a counterclaim for declaratory judgment pursuant to 28 U.S.C. § 2201(a) and Rule 57 of the Federal Rules of Civil Procedure, involving damages in excess of the jurisdictional limits of $75,000, exclusive of interests, costs, and attorneys' fees.

2.   Buyer seeks a declaration under 28 U.S.C. § 2201 of certain rights, duties, and liabilities of Buyer and Seller under a duly executed Vacant Land Contract (the "Contract") relating to the sale of real estate located in Walton County, Florida.

3.   Jurisdiction and venue are also proper in this Court pursuant to 28 U.S.C. 1367, because Buyer's counterclaim forms part of the same case or controversy as Seller's complaint.

## FACTUAL BACKGROUND

4.   Buyer and Seller are parties to the Contract. The Contract provides Buyer with the right to purchase approximately 1,034.89 acres of real estate along Highway 331 in Freeport, Florida (the "Property"). A copy of the Contract is attached to Plaintiff's Amended Complaint as Exhibit 1. Dkt. No. 14-1.

8

5.    The Property is more particularly described by the Legal Description of Property attached hereto as Exhibit "1."

6.    Seller signed the Contract on July 2, 2021.

7.    Buyer signed the Contract on July 6, 2021.

8.    Buyer deposited the required $50,000 earnest money with the escrow holder on July 9, 2021.

9.    Buyer and Seller agreed that the purchase price of the Property shall be determined as either: (*a*) a price set for a single closing purchase of the entire Property at the initial closing ("One Closing Price"); or (*b*) a price set for up to four (4) installment purchases ("Installment Price") as set forth under the terms of the Contract and the exhibits thereto.

10.   Both the purchase price of the Property and the value of the Property exceed $75,000.

11.   The Contract provides Buyer with a period of due diligence to inspect the Property (the "Inspection Period") to determine the Property's suitability—in Buyer's sole discretion—until the later of (*a*) 120 days from the Effective Date of the Contract, that is, from July 6, 2021, or (*b*) the date on which Buyer received certain approvals from the City of Freeport, Florida (the "City"), as to various development plans associated with the Property (the "Approvals").

12.    The Contract defines the Approvals as being (*a*) approvals from the City, Walton County, or such other governmental authority with appropriate jurisdiction, of the buyer's master development plan for the Property; or (*b*) final approval from the City of Buyer's master development plan together with City-approved concurrency availability and an approved Chapter 163 Developer's Agreement with the City.

13.    The Contract provides that Seller may force Buyer to decide whether to accept the Contract under Section 4 of Exhibit A to the Contract, which affords Defendant the option at certain times and under certain circumstances to require Buyer to determine whether to proceed with the Contract and make the Additional Earnest Money Deposit or to terminate the Contract without waiting for the City's Approval (the "Trigger Notice").

14.    The Contract further states, "In the event after One Hundred Fifty (150) days after the Effective Date the Seller determines in its reasonable discretion that (i) the City Approval is not available within the next ninety (90) days or will not be obtainable by the parties after diligent application, or (ii) water/sewer availability is not available or obtainable by the parties for the Property (or, if the parties agree in writing, the portion of the Property for the first Designated Takedown by the first Designated Takedown date), then Seller may elect to require Buyer to make its determination within the Inspection Period whether to proceed with the Agreement

and make the Additional Earnest Money Deposit whereupon the Earnest Money would be at risk subject to the terms and conditions herein, or to terminate the Agreement, without waiting for the City Approval, whereupon Buyer must make such election within thirty (30) days of notice or Seller may terminate the Agreement of right."

15.    The same Section 4 requires that Buyer must "make such election within thirty (30) days of notice or Seller may terminate the Agreement of Right."

16.    In an apparent attempt to send a Trigger Notice, Seller sent an email to Buyer on June 15, 2023, announcing that the City's approval of Buyer's development plan was not available within the next 90 days and demanding Buyer's election to make its determination whether to proceed with the Contract and make an additional earnest money deposit under the Contract's terms.

17.    Buyer provided timely notice of its intent to proceed with the Agreement on July 17, 2023 (the "Trigger Response").

18.    Buyer also deposited an additional $200,000 earnest money deposit with the designated escrow holder on August 14, 2023.

19.    Notwithstanding Buyer's election to proceed with the Contract pursuant to the Trigger Response, Seller informed Buyer that it would no longer honor the terms and conditions of the Contract but would instead consider the Contract terminated.

20.     Accordingly, Buyer filed an action for declaratory relief, in the United States District Court for the Northern District of Florida, Case No.: 3:23-cv-24769-TKW-ZCB, on December 27, 2023 (the "First Dec Action"). In the First Dec Action, Buyer sought a declaration that the Contract was valid and enforceable, and remained an executory contract.

21.     In response, Seller answered and asserted that the Contract was invalid and unenforceable because 1) it was illusory; 2) it was so ambiguous as to lack essential terms; and 3) it lacked mutuality. First Dec. Action at Dkt. No. 10, p. 5-6.

22.     Throughout the fourteen (14) month pendency of the First Dec. Action, Seller argued that the Contract was not valid or enforceable.

23.     Both parties filed Motions for Summary Judgment in the First Dec Action. In Seller's Motion, it argued that the Contract was not enforceable because it was too vague, lacked essential terms, and lacked mutuality. First Dec. Action at Dkt. No. 43, p. 4.

24.     In its Order on the Motions for Summary Judgment (the "SJ Order"), the Court ruled in favor of Buyer and determined that "[t]he contract between the parties was valid from the outset and is still in effect." First Dec. Action Dkt. No. 53.

25.     On the same day that the SJ Order was entered, the Court also entered a Declaratory Judgment declaring that "the contract between the parties was valid

from the outset and is still in effect" (the "<u>Declaratory Judgment</u>"). First Dec. Action Dkt. No. 54.

26.    Although the Court resolved the issue of validity of the Contract, the deadline for the closing(s) contemplated by the Contract remain unresolved and is the subject of Seller's Complaint.

27.    The Contract provides that "in no event shall the 1st scheduled closing extend beyond a period that exceeds Twenty-Four (24) months from the expiration of inspection Period, except and unless, the City, within thirty (30) days of the expiration of the 24 month deadline, confirms to Buyer and/or Seller that City's delivery of adequate capacity of water and sewer to the property is under construction and will be available to Property within three (3) more months, then Buyer and Seller both agree to extent the closing date to the date water and sewer is brought to property by City." Dkt. No. 14-1, Ex. A at ¶ 5.

28.    Thus, this "Outside Closing Date," as Seller refers to it, must occur within 24 months after expiration of the inspection period (the "<u>Post-Inspection Period</u>").

29.    The Seller contends that the Trigger Notice terminated the inspection period and began the Post-Inspection Period.

30.    Seller contends that the 24-month Post-Inspection Period began running on July 17, 2023 and ended on July 17, 2025.

31.    However, Seller's conduct, including but not limited to its arguments both inside and outside of litigation that the Contract was unenforceable, have deprived Buyer of the 24-month Post-Inspection Period to which it is entitled. Such conduct includes, but is not limited to, the following:

    a. On July 17, 2023 (the same day as Buyer's Election to Proceed), Seller wrote an email to Buyer stating that Seller would "terminate Agreement effective immediately." First Dec. Action at Dkt. No. 39-12, p.1-2.

    b. On August 15, 2023, Seller again informed Buyer that it considered the contract terminated. First Dec. Action at Dkt. No. 39-13, p. 2. *See also* First Dec. Action at Dkt. No. 39-2, p. 105:9–106:1.

    c. On December 1, 2023, Seller sent Buyer a letter reiterating Seller's position that the "Contract has been terminated." Moreover, Seller demanded Buyer cease and desist from representing to any third parties that it had a contract to purchase the property at issue. First Dec. Action at Dkt. No. 39-15.

    d. Buyer then commenced the First Dec. Action on December 27, 2023, seeking a declaration that the Contract was valid and in effect. Throughout that litigation until its resolution on February 5, 2025, Seller argued that the Contract was unenforceable and/or had been terminated.

32.    As a result, Seller is estopped from asserting that the Post-Inspection Period was running throughout the pendency of the First Dec. Action.

33.    After the SJ Order, Buyer informed Seller that its position was that the first closing must occur no later than February 5, 2027. Ex. 4 to Seller's Complaint, Dkt. No. 14-4.

34.    In response, on April 24, 2025, Seller sent a letter to Buyer setting forth Seller's position that the first closing must occur by July 17, 2025, notwithstanding Seller's prior contradictory conduct. Ex. 5 to Seller's Complaint, Dkt. No. 14-5.

35.    Seller's contradictory positions did not stop there. On June 20, 2025, Seller filed its original Complaint initiating this action and asserting that the first closing must occur by July 17, 2025 or, alternatively, by August 16, 2025. Dkt. No. 1 at ¶ 25.

36.    Then, on July 21, 2025, Seller sent Buyer a letter asserting, for the first time, that the first closing must occur by August 4, 2025. A true and correct copy of this letter is attached here to as "Exhibit 2."

37.    Closing the transaction under the Contract requires a significant amount of work and expense on the part of Buyer. The City of Freeport will not provide adequate water and sewer until it approves a development order.

38.     Obtaining a development order requires completion of many costly and time-consuming prior steps, including rezoning, developing a master plan, obtaining FDOT approvals for traffic plans, etc.

39.     The expected cost of such work would be between $5 million and $7 million.

40.     Only once this work is completed can a development order be submitted to the City.

41.     Once a development order is submitted, the City has represented to the Buyer that it will take ninety (90) days to provide comments on a development order application.

42.     The City has further advised Buyer that only once such comments are complete can the Buyer obtain adequate water supply for the Property.

43.     Seller's conduct obstructed Buyer's attempts to undertake any of this work and rendered such work futile. Such conduct includes, but is not limited to: 1) Seller's assertions, beginning in August of 2023 that the Contract was "terminated,"[1] 2) Seller's demand on December 1, 2023 that Seller cease working towards obtaining approvals from the City of Freeport;[2] 3) and Seller's assertions, beginning in April of 2025 that Buyer only had a few additional months to close.[3]

---

[1] First Dec. Action at Dkt. No. 39-13.
[2] First Dec. Action at Dkt. No. 39.15.
[3] Am. Complaint Ex. 5.

44.    In addition, Seller told the City of Freeport that Buyer no longer had the Property under contract and was not authorized to submit requests in connection with the Property. Since that time, the City has refused to respond to Buyer.

45.    Seller also refused to sign "all documents Buyer is required to file in connection with development or rezoning approvals" as required by Section 9 of the Contract.

46.    Specifically, Buyer requested that Seller "pre-sign" a proposed development order that would give Buyer confidence that Seller would comply with its contractual obligations.

47.    The Seller refused to sign the proposed development order.

48.    In sum, since signing the Contract, Seller has engaged in a relentless campaign to deprive Buyer of the opportunity to close the transaction under the Contract.

49.    Seller has also failed to act in "good faith" as required by Section 15 of the Contract.

50.    As a result of the foregoing, Buyer is entitled to an uninterrupted, contiguous 24-month Post-Inspection Period, but Seller has deprived Buyer of that right by virtue of its position in connection with the First Dec. Action and in its letter dated April 24, 2025.

51.    Alternatively, Buyer is entitled to an order that provides it with the remainder of 24-month Post-Inspection Period to which it is entitled but which it was deprived of because of Seller's conduct. Assuming *arguendo* that Buyer's Trigger Response of July 17, 2023, began the Post-Inspection Period, the Post-Inspection should be equitably tolled as follows:

a.    It should be tolled for the period from August 15, 2023 – the date Seller first gave Buyer notice of its position that the Contract was no longer in effect – through February 5, 2025 – the date the Court rejected that argument.

b.    It should be tolled for the period from April 24, 2025 – the date Seller first asserted that the first closing date was to occur in July and/or August of 2025 – until such time as the Court enters a declaration resolving the claims in this action.

52.    Based on this alternative approach, as of the date of this filing a total of 107 days[4] would have run from the Post-Inspection Period, leaving Buyer with 623 days left in the Post-Inspection Period.

_____

[4] This is calculated by adding together the periods of time between i) July 17, 2023 and August 15, 2023 (29 days) and ii) February 5, 2025 and April 24, 2025 (78 days). These are the only periods of time during which the Buyer's performance was <u>not</u> clouded and/or hindered by arguments from the Seller that the Contract was invalid or that the first closing date was set to expire in the immediate future.

53.    Finally, Buyer is also entitled to a declaration that adequate water and sewer have not yet been delivered to the Property and that such will not occur until the City has provided water and sewer taps necessary to serve the Property, such that Seller cannot avail itself of the closing deadline set forth in Exhibit A, Section 5(a) to the Contract.

## COUNT I
## DECLARATORY RELIEF

54.    Buyer re-alleges paragraphs 1 through 53 above as if stated in full herein.

55.    Buyer seeks a declaration from this Court that Seller is obligated to abide by the terms and conditions of the Contract, including but not limited to affording Buyer an uninterrupted, contiguous 24-month Post-Inspection Period.

56.    As a result of Seller's conduct alleged herein, Seller is estopped from asserting that the 24-month Post-Inspection Period terminates on July 17, 2025, August 4, 2025, or August 16, 2025.

57.    Whether under the Contract and/or due to equitable principles including estoppel, Buyer is entitled to a 24-month Post-Inspection Period beginning on the date of the Court's entry of an order to this effect.

58.    Alternatively, Buyer is entitled to a declaration setting the expiration of the Post-Inspection Period on a date certain after considering Seller's conduct and equitable considerations of waiver and/or estoppel. As an example of such a solution,

Buyer would be entitled to a declaration that 623 days remain in the Post-Inspection Period from the date of the Court's order to such effect, as calculated in paragraphs 51-52, *supra*.

59.    In addition, Buyer is entitled to a declaration that 1) adequate water and sewer has not yet been delivered to the Property such that the Seller cannot avail itself of Section 5(b) of Exhibit A to the Contract;[5] and that 2) such will not occur until the City has actually provided water and sewer taps necessary to serve the Property.

60.    Buyer seeks such a declaration to ensure that Seller cannot deprive Buyer of its rights again through contradictory positions, conduct, or dilatory efforts.

61.    Without certainty as the expiration of the Post-Inspection Period – and therefore the date of the Outside Closing – Buyer's contractual rights under the Contract are diminished or extinguished.

62.    This demand for declaratory relief is not made for the purpose of seeking a legal opinion but is needed to resolve an existing dispute that creates doubt between the parties as to their legal rights, responsibilities, and obligations.

63.    All conditions precedent to the initiation and maintenance of this action have been complied with, have occurred, or have been waived.

---

[5] As set forth previously, Section 5(b) of Exhibit A to the Contract provides for the possibility of the first closing date having to occur "on the date the City delivers adequate water and sewer capacity to the Property."

64.     An adequate remedy at law does not exist.

65.     Buyer has retained the law firm of Morris, Manning & Martin, LLP to protect Buyer's interests related to the Contract and Buyer is obligated to pay Morris, Manning & Martin, LLP reasonable attorneys' fees for its professional services.

**DEMAND FOR RELIEF**

WHEREFORE, Buyer respectfully requests that this Court adjudicate and decree as follows:

i.      That the Post-Inspection Period does not expire on, and the Outside Closing Date is not, July 17, 2025;

ii.     That either (i) Buyer is entitled to a contiguous, uninterrupted 24-month Post-Inspection Period, which will not expire until 24-months after entry of the Court's order to such effect, or (ii) that the Post-Inspection will not expire until another date certain set by the Court after taking into account equitable considerations of estoppel: for example, that Buyer has 623 days remaining under the Post-Inspection Period as calculated in paragraphs 51-52, *supra*;

iii.    That the parties are obligated to abide by the terms and conditions of the Contract, including but not limited to allowing Buyer the right to exercise its option to purchase the Property under the terms and conditions of the Contract;

21

iv.     That this Court award Buyer its taxable costs and reasonable attorneys' fees; and,

v.      That Buyer be awarded such further relief as this Court deems just and proper.

## COUNT II (IN THE ALTERNATIVE TO COUNT I)
### BREACH OF CONTRACT

66.    Buyer re-alleges paragraphs 1 through 53 above as if stated in full herein.

67.    Seller and Buyer entered into the Contract for the purchase and sale of just over 1,000 acres of unimproved real property located in Walton County, Florida.

68.    The Contract is valid and enforceable.

69.    Buyer has performed its obligations under the Contract or such performance has been hindered, frustrated, or rendered impossible by Seller's conduct.

70.    Seller materially breached the Contract by 1) refusing to sign "all documents Buyer is required to file in connection with development or rezoning approvals" as required by Section 9 of the Contract;" by 2) informing the City that Buyer was not authorized to pursue development of the Property; and 3) by failing to act in good faith in preforming its obligations under the Contract.

71.   As a direct and proximate result of Seller's breach, Buyer has suffered damages to which it is entitled if the Buyer is not entitled to the declaratory relief otherwise sought herein.

### ALTERNATIVE DEMAND FOR RELIEF

WHEREFORE, the alternative to Count I, Buyer respectfully requests entry of final judgment in favor of Buyer:

i.    Awarding Buyer all damages suffered as a result of Seller's breaches;

ii.   Awarding Buyer its taxable costs and reasonable attorneys' fees; and,

iii.  Granting Buyer such further relief as this Court deems just and proper.

Dated this 2nd day of September, 2025.

/s/    Stephen M. Vaughn
STEPHEN M. VAUGHN
Georgia Bar No. 219482
Admitted to practice in the NDFL
MORRIS, MANNING & MARTIN, LLP
3343 Peachtree Rd. NE, Suite 1600
Atlanta, Georgia 30326

## <u>CERTIFICATE OF SERVICE</u>

I certify that this document has been filed via CM/ECF for electronic

distribution to the following counsel on September 2, 2025:

ROBERT M. STEIN
servicerobertstein@rvmrlaw.com
LAUREN K. WHALEY
servicelaurenwhaley@rvmrlaw.com
RENNERT VOGEL MANDLER & RODRIGUEZ, P.A.
*Attorneys for 331 Freeport Partners, LLC*
Miami Tower, Suite 2900
100 S.E. Second Street
Miami, Florida 33131
Telephone (305) 577-4177

                                        */s/     Stephen M. Vaughn*
                                        STEPHEN M. VAUGHN
                                        Georgia Bar No. 219482
                                        Admitted to practice in the NDFL