**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

**331 FREEPORT PARTNERS LLC**,

    **Plaintiff**,

**v.**                                                                                    **Case No. 3:25cv863-TKW-ZCB**

**331 PARTNERS LLC**,

    **Defendant**.

_____/

## ORDER DENYING MOTION TO DISMISS

This case is before the Court based on Plaintiff's motion to dismiss Count I of Defendant's counterclaim (Doc. 18) and Defendant's response in opposition (Doc. 21). Upon due consideration of these filings and the counterclaim (Doc. 15), the Court finds that the motion is due to be denied.

### Background

In July 2021, Defendant (the buyer) contracted to purchase more than 1,000 acres of unimproved property in Walton County near the City of Freeport from Plaintiff (the seller). The contract (Doc. 14-1) included an open-ended inspection period for the buyer to determine whether the property was "suitab[le] for purchase," but it authorized the seller to send the buyer a so-called "trigger notice" after a specified period that would effectively end the inspection period by forcing the buyer to decide whether to proceed to closing or terminate the contract.

In June 2023, the seller sent the trigger notice to the buyer. The buyer responded to the notice on July 17, 2023, with a letter stating that it intended to proceed with the contract, and it thereafter deposited the additional earnest money required by the contract. That moved the parties into the post-inspection period with the buyer's earnest money "at risk" if it does not close.

In August 2023, the seller took the position that the contract was no longer in effect because the buyer did not timely respond to the trigger notice. Four months later, the buyer filed an action in this Court under the Declaratory Judgement Act (DJA)[1] seeking declarations that it timely responded to the trigger notice, that the seller's purported termination of the contract was ineffective, that the contract was still in effect, and that the parties are still obligated to comply with the terms and conditions of the contract. *See* Case No. 3:23-cv-24769, ECF Doc. 1 at 8-9.

In February 2025, the Court entered a judgment in the prior DJA action finding that the contract "was valid from the outset and is still in effect"; that "[t]he parties are now in the post-inspection period under the contract and the $250,000 earnest money deposit is now 'at risk'"; and that "[t]he parties remain obligated to abide by the terms and conditions in the contract." *Id.*, ECF Doc. 54. The Court also gave the parties some practical advice by encouraging them "to return to the negotiating table to discuss any necessary or advisable changes to the contract based on the

---

[1] 28 U.S.C. §2201(a).

2

Court's rulings and the passage of time while this case was pending" and "to clean up the contractual language that all agree is more confusing than it needs to be so future disputes can be avoided."  *Id.*, ECF Doc. 53 at 2; *see also id.*, ECF Doc. 60 at 83–84 (suggesting that the parties needed "to go back to the negotiating table" because they are "still married" and "need to figure out a way to get along or go [their] separate ways").

The parties did not take the Court's advice (or, if they did, they reached an impasse) because, in June 2025, the seller filed this DJA action alleging that there is a dispute between the parties regarding the closing date under the contract that requires judicial resolution.  The original complaint only sought a declaration that the closing date was in July or August 2025 (Count I), but the amended complaint (Doc. 14) added a breach of contract claim (Count II) based on the buyer's failure to close by the date the seller claims that the closing should have occurred.

The buyer responded to the amended complaint with an answer admitting that there is a dispute about the closing date that requires judicial resolution and a counterclaim seeking a declaration that the closing date is in February 2027 at the earliest (Count I).  The counterclaim also asserts an "alternative" breach of contract claim (Count II) based on the seller's interference with the buyer's efforts to obtain the necessary development approvals for the property and its failure to perform its obligations under the contract in good faith.

3

The seller responded to the counterclaim with a motion to dismiss under Fed. R. Civ. P. 12(b)(6) arguing that Count I fails to state a legally sufficient claim for declaratory relief because the declarations sought by the buyer are inconsistent with both the plain language of the contract and the judgment entered in the prior DJA action. In response to the motion to dismiss, the buyer argued that the declarations it is seeking are not inconsistent with judgment in the prior DJA action and that the Court has "wide leeway to fashion appropriate declaratory relief in this case, including that which is sought by the Buyer."

The motion to dismiss is fully briefed. Oral argument was not requested and is not needed. *See* N.D. Fla. Loc. R. 7.1(K). Thus, the motion is ripe for a ruling.

## Standard of Review

"A motion to dismiss a counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6) is evaluated in the same manner as a motion to dismiss a complaint." *Geter v. Galardi S. Enters., Inc.*, 43 F. Supp. 3d 1322, 1325 (S.D. Fla. 2014) (quoting *Great Am. Assur. Co. v. Sanchuk, LLC*, 2012 WL 195526, at *2 (M.D. Fla. Jan. 23, 2012)). Thus, when reviewing the motion, the factual allegations in the counterclaim must be taken as true and construed in the light most favorable to the non-moving party. *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

"To survive a motion to dismiss, [the counterclaim] must contain sufficient

4

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The plausibility standard is satisfied "when the [counterclaimant] pleads factual content that allows the court to draw the reasonable inference that the [counterclaim defendant] is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556).  This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555).

### Analysis

The DJA provides in pertinent part that "[i]n any case of actual controversy with its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interest party seeking such declaration …." 28 U.S.C. §2201(a).  The remedy provided by the DJA is "an all-purpose remedy designed to permit an adjudication whenever the court has jurisdiction, there is an actual case or controversy and an adjudication would serve a useful purpose." *Allstate Ins. Co. v. Emps. Liab. Assur. Corp.*, 445 F.2d 1278, 1280 (5th Cir. 1971).

"[A] legal dispute over the correct interpretation of a contract is an appropriate subject for declaratory relief." *Pediatrix Med. Grp. of Fla., Inc. v. Aetna Inc.*, 2018 WL 4997092, at *6 (S.D. Fla. Aug. 27, 2018).  However, "[a] district court cannot

5

entertain a suit for a declaratory judgment unless there is a 'definite and concrete' controversy." *Miccosukee Tribe of Indians of Fla. v. Kraus-Anderson Const. Co.*, 607 F.3d 1268, 1275, n. 14 (11th Cir. 2010) (quoting *Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240 (1937)). The controversy must be "one that is appropriate for judicial resolution" in that it "touch[es] [on] the legal relations of parties having adverse legal interests" rather than a "difference or dispute that is hypothetical or abstract in character" or that is "academic or moot." *Aetna*, 300 U.S. at 240–41.

Here, the counterclaim plausibly alleges that there is a definite and concrete controversy between the parties regarding the correct interpretation of the contract with respect to the closing date. Indeed, the seller admitted as much when it alleged in the amended complaint that "[a] current dispute exists between the Seller and Buyer as to when the Outside Closing Date occurs under the Contract" and that the dispute creates an "actual, present and practical need for a declaration as to what constitutes the Outside Closing Date under the Contract." Doc. 14 at ¶¶42, 45; *see also id.* at ¶¶48–49 (alleging that the parties have an "actual, present, adverse and antagonistic interest" in the subject matter of the amended complaint and that "relief sought is not merely giving of legal advice by the courts or the answer to questions propounded from curiosity"). The parties' dispute over the closing date is not hypothetical or merely academic because the parties have adverse legal interests on that issue and the resolution of that issue will determine when the parties' contractual

6

relationship ends—if it has not already ended.  Thus, the counterclaim adequately states a claim for declaratory relief.

The Court did not overlook the seller's argument that the buyer is not entitled to the declarations it seeks because that would require "the Court to use equitable doctrines to override the clear and expressly agreed to terms of the Contract," which the Court cannot do.  However, that argument goes to the merits of the counterclaim, not whether it states a plausible claim for declaratory relief.[2]

Arguments about the merits of the counterclaim are premature because "[a] motion to dismiss a complaint for a declaratory judgment is not a motion on the merits" and only "determine[s] whether the plaintiff is entitled to a declaration of rights, not whether it is entitled to a declaration in its favor." *Parr v. Maesbury Homes, Inc.*, 2009 WL 5171770, at *8 (M.D. Fla. Dec. 22, 2009); *see also Tobon v.*

---

[2] The same is true of the seller's argument that the counterclaim is an improper request to modify the judgment issued in the prior DJA action, although that argument is also meritless because the Court did not decide (and was not asked to decide) in the prior case when the post-inspection period begins or ends.  *See* Case No. 3:23-cv-24769, ECF Doc. 68 at 2 (denying buyer's untimely motion to re-open the case to decide that issue).  That said, to the extent that the buyer is seeking a declaration that section 5 of the contract overrides the 24-month period such that it does not have an obligation to close until adequate water and sewer capacity is provided to the property, it will be hard-pressed to convince the Court that it is entitled to such a declaration based on the reasoning underlying the Court's rulings in the prior DJA action.  *Id.*, Doc. 60 at 70, 85–86 (explaining that the language in paragraph 5 of the contract that appears to allow the buyer to get its earnest money back if adequate water and sewer capacity is not available to the property by the 24-month closing deadline does not apply where, as here, the trigger notice was sent).  Indeed, the buyer effectively assumed the risk that water and sewer capacity would not be available to the property at closing when it elected to proceed with the contract (and put its earnest money "at risk") in response to the trigger notice.

*American Sec. Ins. Co.*, 2007 WL 1796250, at *2 (S.D. Fla. June 20, 2007). Moreover, "[r]equesting an improper remedy is not fatal to a claim," particularly where (as here, *see* Doc. 15 at 22) the operative pleading seeks such other relief that the Court deems just and proper. *A.W. by and through J.W. v. Coweta Cnty. Sch. Dist.*, 110 F.4th 1309, 1315 (11th Cir. 2024); *see also* Wright & Miller's Federal Practice & Procedure §1255 (4th ed. 2021) ("The sufficiency of a pleading is tested by the Rule 8(a)(2) statement of the claim for relief and the demand for judgment is not considered part of the claim for that purpose …. Thus, the selection of an improper remedy in the Rule 8(a)(3) demand for relief will not be fatal to a party's pleading if the statement of the claim indicates the pleader may be entitled to relief of some other type.") (footnotes omitted).

That said, even if the seller is correct that the Court cannot rely on equitable doctrines when interpreting the contract and issuing a declaration regarding the closing date, the equitable doctrines referenced by the buyer in its response to the motion to dismiss (e.g., equitable estoppel, prevention of performance) will certainly come into play when the Court[3] decides whether the buyer breached the contract by not closing by August 2025. And, based on what the Court knows about the case from the prior DJA action, the seller will be hard-pressed to convince the Court that the buyer breached the contract by not closing by August 2025 because (1) the

---

[3] Neither party demanded a jury trial on the seller's breach of contract claim.

8

contract plainly contemplated that the buyer would have up to 24 months after the inspection period to close,[4] and (2) the evidence presented in the prior DJA action established that the seller effectively precluded the buyer from closing during the bulk of the post-inspection period by taking the position that the contract was no longer in effect.  On the other hand, the buyer will be hard-pressed to convince the Court that the closing date should be in February 2027 (or later) unless there is evidence showing that the seller effectively prevented the buyer from closing and/or continued to interfere with its efforts to obtain the necessary approvals from the City of Freeport after the judgment in the prior DJA action was entered.[5]

---

[4] The contract authorizes the buyer to close on the property in ¼ installments in four separate closings or to close on the entire property in a single closing.  The contract provides that the first (or single) closing will occur on the <u>later of</u> (1) 180 days after the end of the inspection period, (2) the date the City of Freeport delivers adequate water and sewer capacity to the property, or (3) a date agreed upon by the parties; <u>except that</u> "in no event shall the 1st scheduled closing extend beyond a period that exceeds Twenty-Four (24) months from the inspection period" unless certain contingencies occur that automatically extend the 24-month period.  The pleadings do not allege whether the City has delivered adequate water and sewer capacity to the property (or, if not, when it is expected to do so), nor do they indicate whether the contingencies that automatically extend the 24-month period have occurred.  Thus, at this point, it appears that the closing date will be based on the 24-month period unless adequate water and sewer capacity is delivered to the property sooner.

[5] The fact that the seller sent the buyer a letter in April 2025 asserting that the closing date was imminent and then filed this action seeking a declaration that the closing date was in July or August 2025, <u>without more</u>, is likely not enough to preclude the buyer from continuing to work towards closing on the contract if it still intends to do so.  However, according to the allegations in the counterclaim—which the Court must accept as true for purposes of ruling on the motion to dismiss—the seller has continued to interfere with the buyer's efforts to obtain the necessary approvals for the property.  *See* Doc. 15 at 17 (¶¶44–49).  Of course, if it turns out those allegations are describing conduct that occurred before February 2025 (not after April 2025), then then it is hard to see how the buyer would not have to close by October 21, 2026—which is the end of a 24-month period commencing on the date the buyer responded to the trigger notice and excluding the time between August 2023 and February 2025 when the buyer was precluded from closing or

9

The Court will, of course, keep an open mind on these issues as the case moves forward. However, because it does not currently appear that either party has particularly firm legal footing for the positions that they are taking or the relief that they are seeking, the Court continues to believe that the parties would be better off working together to resolve this case than continuing to litigate it. *See* Doc. 13 at ¶(3)(a) (encouraging the parties to attempt to negotiate a resolution of this case and engage in mediation by early November 2025); Case No. 3:23-cv-24769, ECF Doc. 60 at 84 (telling the parties more than 8 months ago that they "need to figure out a way to get along or go [their] separate ways"). The sooner that happens, the better for all concerned.

## Conclusion

In sum, for the reasons stated above, it is **ORDERED** that:

1.      Plaintiff's motion to dismiss Count I of Defendant's counterclaim (Doc. 18) is **DENIED**.

2.      Plaintiff has 14 days from the date of this Order to answer Defendant's counterclaim.

3.      The parties are strongly encouraged to make a serious effort to negotiate or mediate a resolution of this case considering the rulings and observations in this

---

otherwise performing under the contract because the seller took the position that the contract was no longer in effect.

10

Order before they spend additional time and money litigating—particularly now that there are competing breach of contract claims with the specter of prevailing party attorney's fees hanging over the case.

**DONE and ORDERED** this 15th day of October, 2025.

_____
**T. KENT WETHERELL, II**
**UNITED STATES DISTRICT JUDGE**