UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

Case No. 3:25-cv-00863-TKW-ZCB

331 FREEPORT PARTNERS, LLC,
a Florida Limited Liability Company,

Plaintiff/Counter-Defendant,

v.

331 PARTNERS, LLC,
a Georgia Limited Liability Company,

Defendant/Counter-Plaintiff.

________________________________/

**PLAINTIFF/COUNTER-DEFENDANT 331 FREEPORT PARTNERS, LLC'S MOTION FOR SUMMARY JUDGMENT ON ALL COUNTS OF ITS AMENDED COMPLAINT AND COUNT I OF DEFENDANT'S AMENDED COUNTERCLAIM AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff/Counter-Defendant, 331 Freeport Partners, LLC ("Seller"), by and through undersigned counsel and pursuant to *Fed. R. Civ. P.* 56, respectfully moves for entry of a partial summary judgment in Seller's favor as to all counts of its Amended Complaint [D.E. 14] ("Complaint") and Count I of the Amended Counterclaim [D.E. 15] ("Counterclaim") filed by Defendant/Counter-Plaintiff, 331 Partners, LLC ("Buyer"), and says:

## INTRODUCTION

This matter arises from a contract dispute concerning a large parcel of real property that has remained undeveloped and tied up in litigation for nearly five years.

Seller's position has remained unchanged throughout: Buyer must either close on the Property or terminate the Contract.[1] Buyer can no longer refuse to do either. After five years, it is time for Buyer to "fish or cut bait."

The parties entered into the Contract in 2021. By 2023, after considerable delay and little meaningful progress toward closing, Seller had serious doubts that Buyer was ready, willing, and able to close. Seller exercised its contractual right to send a Trigger Notice, forcing Buyer to decide whether to proceed or terminate. Seller took the position that Buyer failed to timely respond and that the Contract was terminated. Buyer disagreed and filed suit to enforce the Contract. Buyer prevailed and the Contract remained executory.

But now, rather than move forward pursuant to the Contract it sought so desperately to enforce, Buyer curiously wants to avoid the natural and probable consequences of its victory. Rather than closing, Buyer attempts to manufacture new disputes and resurrect pre-Trigger Notice diligence-related issues to cause even further delay. These positions are legally unsupported and irrelevant: the Court has conclusively determined the parties are in the Post-Inspection Period, Buyer's

[1] All capitalized terms and abbreviations shall have the meanings provided for them in the Complaint and the Contract.

Earnest Money is at risk, and Buyer previously told the Court that it could close even in light of supposed water and sewer issues it now invokes as a basis for delay.

Buyer seeks a result that neither the Contract nor the law permits: the ability to hold Seller's Property off the market indefinitely while postponing closing, all while retaining the benefit of a purchase price negotiated nearly five years ago. Seller's position is the same as it ever was—Buyer must either close or walk away.

## THE PLEADINGS

Count I of Seller's Complaint seeks a declaration fixing the Outside Closing Date based on the undisputed occurrence of factual events and the clear timelines set forth in the Contract. Count II of Seller's Complaint alleges that Buyer breached the Contract by failing to close by the Outside Closing Date and/or failing to act diligently and in good faith in performing all obligations under the Contract.

Count I of Buyer's Counterclaim seeks a declaration that (i) Buyer is entitled to a contiguous, uninterrupted 24-month Post-Inspection Period that will expire 24 months after the Court enters an order to such effect or, alternatively; (ii) the Post-Inspection Period expires on a date certain after taking into account equitable considerations of estoppel; and (iii) adequate water and sewer has not been delivered to the Property such that the Seller cannot avail itself of Section 5(b) and that such

will not occur until the City has actually provided water and sewer taps necessary to serve the Property. D.E. 15 ¶ 59; *see also* ad damnum clause, *id.* at 21.

Count II of Buyer's Counterclaim for breach of contract, brought in the alternative, alleges that Seller breached the Contract by: refusing to sign documents required for development or rezoning approvals as required by Section 9 of the Contract; informing the City of Freeport that the Buyer was not authorized to develop the Property; and failing to act in good faith in performing contractual obligations.

## SUMMARY OF THE ARGUMENT

There are three reasons which justify the Court entering a final summary judgment in Seller's favor on its Complaint and the Counterclaim.

***First***, the Outside Closing Date already expired. In its February 5, 2025 Declaratory Judgment resolving prior litigation between the parties (the "First Dec Action"), the Court determined that the Trigger Notice "was properly sent and timely responded to" and that "[t]he parties are now in the postinspection period under the contract." D.E. 53 in First Dec Action at ¶ 2; D.E. 54 in First Dec Action.[2] Buyer's own counsel confirmed that the Trigger Notice determines "whether the parties are

---

[2] For the Court's convenience, filings from the First Dec Action, D.E. 53, 54, and 60, are attached as Exhibits 1, 2, and 3, respectively. All references herein to D.E. 53, D.E. 54, and D.E. 60 refer to those filings.

in the inspection period or the postinspection period" and therefore "there's the 24-month deadline that applies." MSJ Hr'g Tr. 5:13-18. Counting 24 months from Buyer's July 17, 2023 response yields an Outside Closing Date of July 17, 2025. Alternatively, counting from Buyer's August 15, 2023 payment of the Additional Earnest Money Deposit yields an Outside Closing Date of August 16, 2025.

***Second***, Buyer's Counterclaim arguments premised on events which allegedly occurred during the Inspection Period—including claims regarding water and sewer service and Seller's purported interference with diligence activities—are barred as a matter of law. The Court already ruled that the water and sewer provisions of Section 5(b) of the Contract apply only "in the context of a situation where the trigger notice was not sent" MSJ Hr'g Tr. 85:7–8. The Court reiterated that Buyer "effectively assumed the risk that water and sewer capacity would not be available to the property at closing when it elected to proceed with the contract." D.E. 22 at 7, n.2. Buyer's own counsel told the Court in the First Dec Action that "the contract allows the buyer to close even without sewer," that Buyer "can still close," and that "there is no requirement that sewer needs to be supplied to this property in order to close." MSJ Hr'g Tr. 12:20-25, 13:1-7. Buyer is estopped from taking the opposite position and claiming those same issues are preventing closing or somehow justify a new 24-month diligence period.

***And third***, the Contract's 24-month cap on the Post-Inspection Period is absolute and unambiguous. The Contract contains no tolling provision, and the Court observed that "[t]here's nothing in the contract that says these time periods are tolled pending litigation" MSJ Hr'g Tr. 10:17–18. Buyer's request for a "contiguous, uninterrupted 24-month Post-Inspection Period" beginning on an unidentified future date [D.E. 15 at 19–20, ¶¶ 55–57] would require the Court to rewrite the Contract—something Florida law does not permit—and which would be in contravention of Florida's strong policy disfavoring restraints on alienation of real property.

Accordingly, Seller requests that the Court enter summary judgment fixing the Outside Closing Date and granting the relief detailed in the conclusion below and set forth herein. Further, the Court should find that if Buyer fails to close by the Outside Closing Date such failure shall constitute a material breach by Buyer, the Contract shall be deemed terminated, and Seller shall retain all deposits Buyer made under the Contract.[3]

[3] If, at the time the Court issues its order, the Outside Closing Date as determined by the Court is a date that has already passed, the Court should find that Buyer has materially breached the Contract by failing to close by the Outside Closing Date and, thus, also grant summary judgment in favor of Seller on Count II for breach of contract.

For all of these reasons, the Court should also enter summary judgment in favor of Seller on Count I of Buyer's Counterclaim. There is no basis in law or fact for Buyer to obtain a new 24-month uninterrupted Post-Inspection Period commencing on an uncertain future date. The Court determined in the First Dec Action that the parties were already in the Post-Inspection Period, and there is no basis to support the notion that the Post-Inspection Period could begin—*at the very latest*—any time after the Court's February 5, 2025 ruling.

As detailed below, the relevant facts have already been established by the Court's prior orders, the Contract's plain language, and Buyer's own admissions; what remains are pure questions of law, each of which the Court should resolve in Seller's favor.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1. On or about July 6, 2021, Seller and Buyer entered into a Vacant Land Contract (the "Contract") [D.E. 14-1] for the purchase and sale of approximately 1,034.89 acres of unimproved real property located along Highway 331 in the City of Freeport, Walton County, Florida (the "Property").

2. The Contract provides Buyer with a Due Diligence Period during which Buyer will have a period to inspect the Property to determine its suitability for purchase (the "Inspection Period"). D.E. 14-1 at 9; *see also id*. at Ex. A, § 4.

3. Pursuant to Exhibit A of the Contract, the Inspection Period continues until the later of (a) 120 days from the Effective Date of the Contract (July 6, 2021) or (b) the date on which Buyer received certain approvals from the City of Freeport (the "Approvals"). *Id.* at Ex. A, § 4.

4. The Contract also includes a mechanism—the "Trigger Notice"—through which Seller may require Buyer to elect whether to proceed with the Contract and pay an Additional Earnest Money Deposit or terminate the Contract. *Id.* Specifically, the Contract states:

> In the event that after One Hundred Fifty (150) days after the Effective Date the Seller determines in its reasonable discretion that (i) the City Approval is not available within the next ninety (90) days or will not be obtainable by the parties after diligent application, or (ii) water / sewer availability is not available or obtainable by the parties for the Property… then Seller may elect to require Buyer to make its determination within the Inspection Period whether to proceed with the Agreement and make the Additional Earnest Money Deposit whereupon the Earnest Money would be at risk subject to the terms and conditions herein, or to terminate the Agreement…

Contract, Ex. A at ¶ 4.

5. The Court stated in its *Order Denying Motion to Dismiss* [D.E. 22] that the Trigger Notice "would effectively end the inspection period by forcing the buyer to decide whether to proceed to closing or terminate the Contract." *Id.* at 1.

6. On or about June 15, 2023, Seller sent Buyer a Trigger Notice. D.E. 14 ¶ 13.

7. On July 17, 2023, Buyer responded to the Trigger Notice by providing written notice of its intent to proceed with the Contract ("Buyer's Response"). D.E. 14 at ¶ 14; D.E. 15 at ¶ 17.

8. On or about August 15, 2023, Buyer paid the $200,000.00 Additional Earnest Money Deposit as required by the Contract. D.E. 14 at ¶ 15; D.E. 15 at ¶ 18. As the Court has stated, "[t]hat moved the parties into the post-inspection period with the buyer's earnest money "at risk" if it does not close." [D.E. 22 at p. 2].

9. After a dispute arose regarding the validity of the Contract, on December 27, 2023, Buyer filed an action for declaratory relief in the Court. Case No. 3:23-cv-24769-TKW-ZCB (the "First Dec Action"). D.E. 14 at ¶ 6; D.E. 15 at ¶ 20.

10. On February 5, 2025, the Court held oral argument on cross-motions for summary judgment in the First Dec Action [D.E. 60 *Official Transcript of 02.05.25 Hearing re Cross-Motions for Summary Judgment* "MSJ Hr'g Tr."] and entered its Order on Cross-Motions for Summary Judgment [D.E. 53], which granted Buyer's motion for summary judgment and denied Seller's motion for summary judgment. D.E. 53.

11. On February 5, 2025, the Court entered its Order and the Clerk entered a Declaratory Judgment [D.E. 54] expressly finding and declaring that:

> The contract between the parties was valid from the outset and is still in effect. The 'trigger notice' was properly sent and timely responded to. The parties are now in the post-inspection period under the contract and the $250,000 earnest money deposit is now 'at risk' if Plaintiff does not close. The parties remain obligated to abide by the terms and conditions in the contract.

12. During the summary judgment hearing in the First Dec Action, Buyer's counsel, Mr. Massey, confirmed that the Trigger Notice marked the end of the Inspection Period:

> THE COURT: I guess let's start there then. Why does it matter whether the trigger notice was effective or not when you responded to it?
>
> MR. MASSEY: As a practical matter, Your Honor, it just determines whether the parties are in the inspection period or the postinspection period. The postinspection period, once the parties enter into that time frame, there's the 24-month deadline that applies.

MSJ Hr'g Tr. 5:13–18.

13. Buyer also agreed that the Trigger Notice was the contractual mechanism that forced Buyer to decide whether to close or not:

> MR. MASSEY: And, Your Honor, I would say that's exactly why the trigger notice was in place because the defendant believes that, Hey, you're not doing anything, you're not doing enough, whatever it might be, we're tired

> of this languishing around. Then they send the trigger notice, and it forces the opportunity to decide whether to close or not.

MSJ Hr'g Tr. 19:6-11.

14. The Court further observed during the hearing, and Buyer's counsel further acknowledged, that the Contract contains no mechanism by which time periods may be tolled:

> THE COURT: But that would be an equitable determination of some sort. There's nothing in the contract that says these time periods are tolled pending litigation, I assume.
>
> MR. MASSEY: Agreed, your honor. I think that would probably be best characterized as equitable remedy.

MSJ Hr'g Tr. 10:16–21.

15. The Court further adopted and acknowledged this reasoning, stating that "[t]he declaration would be, under my hypothetical, would be trigger notice was properly sent; properly responded to; the $250,000 is at risk; and now we're, as Mr. Sickler said, on the glide path to closing." *Id.* 42:6-9.

16. Notably, Buyer's counsel did not dispute the Court's characterization. Instead, when asked whether his client would be unhappy with that outcome, Mr. Massey responded: "I wouldn't necessarily say that [sic] to be unhappy with it." *Id.* at 42:19–25.

17. Section 5 of Exhibit A to the Contract states that the 1st Scheduled Closing:

> shall be on the later date that is: (a) 180 days following the expiration of the Inspection Period, or (b) the date the City delivers adequate water and sewer to the Property (or the Designated Takedown for the 1st Closing), or (c) such other date as Buyer and Seller may mutually agree to in writing (the "closing date"), however, (A) in no event shall the 1st scheduled closing extend beyond a period that exceeds Twenty-Four (24) months from the expiration of the Inspection Period…

Contract, Ex. A at ¶ 5.

18. With respect to the above-mentioned water and sewer provision in Section 5(b) of Exhibit A to the Contract (hereinafter referred to as "Section 5(b)"), the Court ruled in the First Dec Action:

> I do interpret those provisions … about the water and sewer not being available, not closing to be in a — in the context of a situation where the trigger notice was not sent. Because that to me is the only way you can harmonize all these provisions, particularly the at-risk, specific at-risk provision of the money being put up after the trigger notice.

MSJ Hr'g Tr. 85:5-11.

19. Indeed, the Court expressly contemplated, and Buyer's counsel notably did not disagree:

> THE COURT: … and it seems to be that by exercising the trigger notice, putting that money at risk, per the contract terms, you're essentially saying I'm closing without water and sewer, or if I don't, I'm giving up my $250,000. Why is that not the best reading of this contract?
>
> MR. MASSEY: I don't necessarily disagree with Your Honor's reading.

MSJ Hr'g Tr. 14:17-23.

20. Buyer's counsel, in fact, admitted *numerous* times that the "contract allows the buyer to close even without sewer. So he can still move forward, he can still close, he can still take down the property without the sewer." MSJ Hr'g Tr. 12:21–23; *id*. at 13:5–7 ("there is no requirement that sewer needs to be supplied to this property in order to close"); *id.* at 14:1–2 ("[h]e doesn't have to close with sewer").

21. The Court further explained that it would "absolutely make no sense" for Buyer to be able to walk away "because of some sewer issue" and recover its deposit after the Trigger Notice:

> And because it was a critical component in my mind of making this a valid contract, it would just absolutely make no sense to say that that money is still refundable, again absent agreement of the parties which is provided for, but if they walk away because of some sewer issue at this point.
>
> So that would be my interpretation, harmonization of those two provisions. So whether you call the paragraph 4

> trumping the paragraph 5 or reading them in harmony, that's the way I would read them, just so there's no confusion down the road that if they walk away, they somehow get their money back because I just don't see that ...

MSJ Hr'g Tr. 85:13-23.

22. The Court then summarized its ruling as follows: "The contract's valid and in effect. $250,000 is at risk, which means we're in the postinspection period, which means $250,000 at risk." MSJ Hr'g Tr. 86:10-16.

23. On October 15, 2025, the Court entered the *Order Denying Motion to Dismiss* [D.E. 22] denying Seller's attempt to dismiss Count I of Buyer's Counterclaim. Therein, the Court observed that "the buyer effectively assumed the risk that water and sewer capacity would not be available to the property at closing when it elected to proceed with the contract (and put its earnest money 'at risk') in response to the trigger notice." *Id.* at 7, n.2.

24. In that Order, the Court also found that:

> The buyer responded to the [trigger] notice on July 17, 2023, with a letter stating that it intended to proceed with the contract, and it thereafter deposited the additional earnest money required by the contract. *That moved the parties into the post-inspection period* with the buyer's earnest money "at risk" if it does not close [emphasis added].

*Id.* at 2.

25. In discussing the parties' respective closing obligations, the Court calculated the applicable 24-month closing period from "the date the Buyer responded to the Trigger Notice." *Id.* at 9, n.5.

26. The Contract requires that "Seller and Buyer will use diligence and good faith in performing all obligations under this Contract." Contract, § 15.

27. The Contract expressly provides that, during the Inspection Period, Buyer may determine in its sole discretion whether the Property is suitable for its intended use and may investigate matters including zoning, governmental approvals, permits, access, water and utility availability, and other development-related issues that Buyer deems appropriate. Contract § 9(a)(1).

28. On June 17, 2025, following entry of judgment in the First Dec Action, Seller advised Buyer that adequate water and sewer service was available to the Property and that any remaining actions necessary to vest or secure such capacity were within Buyer's control. *See* Exhibit 4.

29. On July 21, 2025, Seller advised Buyer that Seller "is ready, willing, and able to close on or before August 4, 2025 and that it shall permit the Buyer to close by such date." *See* D.E. 15-2.

30. Seller has not done anything to prevent Buyer from closing on its purchase of the Property since at the very latest, February 5, 2025. In any event, any

diligence-related allegations are irrelevant as the parties are in the Post-Inspection Period.

31. Buyer has never attempted to close, and the record does not provide any representation by Buyer that they are ready, willing, and able to close.

32. In Buyer's Counterclaim for declaratory relief, Buyer seeks, among other things, a declaration that it is entitled to a "contiguous, uninterrupted 24-month Post-Inspection Period" beginning on the date of the Court's entry of an order to that effect, or alternatively, a declaration setting the expiration of the Post-Inspection Period on a date certain after considering Seller's conduct and equitable considerations. D.E. 15 ¶¶ 55–58.

33. In Buyer's alternative breach of contract claim (Count II of the Counterclaim), Buyer alleges that Seller breached the Contract by (1) refusing to sign documents required for development or rezoning approvals under Section 9 of the Contract; (2) informing the City of Freeport that Buyer was not authorized to pursue development of the Property; and (3) failing to act in good faith. D.E. 15 ¶ 70.

34. In paragraphs 31 and 43–49 of Buyer's Counterclaim, Buyer alleges that Seller "deprived Buyer of the 24-month Post-Inspection Period to which it is entitled" by asserting in August 2023 that the Contract was "terminated," Seller's

demand on December 1, 2023 that Buyer cease working towards obtaining approvals from the City of Freeport, and Seller's assertions beginning in April 2025 that Buyer only had a few additional months to close. D.E. 15 at ¶¶ 31(a)–(d), 43–49.

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P.* 56(a). "The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact." *FindWhat Inv'r Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). A "material" fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *His House Recovery Residence, Inc. v. Cobb Cty.*, 806 Fed. Appx. 780 (11th Cir. 2020). Once the movant meets this burden, "the burden shift[s] to the non-moving party to demonstrate that there is indeed a[n] … issue of [material] fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

## ARGUMENT

### I. THE OUTSIDE CLOSING DATE MUST BE CALCULATED AS 24 MONTHS FOLLOWING THE BUYER'S RESPONSE TO THE TRIGGER NOTICE

Seller's primary position is straightforward and consistent with the Court's prior ruling: the Trigger Notice ended the Inspection Period, Buyer elected to proceed, the parties entered the Post-Inspection Period, and the Contract's 24-month outside limit ran from that point. On that analysis, the Outside Closing Date was July 17, 2025, or, at the latest, August 16, 2025.

#### A. The Court Has Already Tied the Trigger Notice to the Conclusion of the Inspection Period

The Court has already determined that when the "buyer responded to the [trigger] notice on July 17, 2023, with a letter stating that it intended to proceed with the contract, and it thereafter deposited the additional earnest money required by the contract [ ] *[t]hat moved the parties into the post-inspection period.*" D.E. 22 at 2 (emphasis added). Further, the Court has already tied the calculation of the 24-month Post-Inspection to "the date the Buyer responded to the Trigger Notice." *Id.* at 9, n.5. ("it is hard to see how the buyer would not have to close by October 21, 2026—which is the end of a 24-month period commencing on the date the buyer responded to the trigger notice…").

Buyer took the same position in the First Dec Action. Buyer's counsel told the Court that, "[a]s a practical matter," the Trigger Notice "just determines whether the parties are in the inspection period or the postinspection period," and that "[t]he postinspection period, once the parties enter into that time frame, there's the 24-month deadline that applies." MSJ Hr'g Tr. 5:13-18. Buyer further agreed that the Trigger Notice forced Buyer to decide "whether to close or not" (*id.* at 19:5-11) and represented "absolutely the ability to put the endpoint" on the Inspection Period. *See id*. 22:4.

Those statements were central to the Court's determination that the Contract remained valid and enforceable rather than an indefinite, illusory option. The Court's final summary-judgment ruling only makes sense if the Trigger Notice moved the parties into the Post-Inspection Period and placed Buyer on the contractual path to closing.

### B. The Contract's 24 Month Outside Limit Expired in July or August 2025

Section 5 of Exhibit A to the Contract states that the 1st Closing "shall be" on the later date of: "(a) 180 days following the expiration of the Inspection Period, or (b) the date the City delivers adequate water and sewer to the Property (or the Designated Takedown for the 1st Closing), or (c) such other date as Buyer and Seller may mutually agrees to in writing," but "in no event shall the 1st scheduled closing

extend beyond a period that exceeds Twenty-Four (24) months from the expiration of the Inspection Period." Contract, Ex. A at ¶ 5.

The 24 month outside limit is therefore an absolute backstop. As such, if the Inspection Period expired when Buyer responded to the Trigger Notice on July 17, 2023, the Outside Closing Date was July 17, 2025. Alternatively, if the Court instead determines the date from Buyer's payment of the Additional Earnest Money Deposit on August 15, 2023, the Outside Closing Date was August 16, 2025. Under either calculation, the Outside Closing Date has passed.

### C. Neither the Contract nor Florida Law Permits the Outside Closing Date to be Tolled or Reset

The Contract contains no tolling provision. The Court already observed during the summary-judgment hearing in the First Dec Action that "[t]here's nothing in the contract that says these time periods are tolled pending litigation," and Buyer's counsel agreed. MSJ Hr'g Tr. 10:16-21.

Here, the Contract does not state that Buyer is entitled to a "contiguous, uninterrupted" Post-Inspection Period. In fact, Buyer does not articulate any legitimate contractual provision or legal principle in support of its assertion. Rather, the Contract provides, in unambiguous terms, that "in no event shall the 1st scheduled closing extend beyond a period that exceeds Twenty-Four (24) months from the expiration of the Inspection Period." Contract, Ex. A, § 5. This is an

absolute outer boundary that cannot be extended by unsupported equitable doctrines or impermissible judicial rewriting of the Contract. Buyer's request for a new "contiguous, uninterrupted 24-month Post-Inspection Period" would do exactly what Florida law prohibits. It would rewrite the Contract by replacing the bargained-for 24-month outside limit with a new period beginning on an unidentified future court-selected date.

The Seller recognizes that the Court noted the Seller:

> will be hard-pressed to convince the Court that the buyer breached the contract by not closing by August 2025 because (1) the contract plainly contemplated that the buyer would have up to 24 months after the inspection period to close, and (2) the evidence presented in the prior DJA action established that the seller effectively precluded the buyer from closing during the bulk of the post-inspection period by taking the position that the contract was no longer in effect.

D.E. 22 at 9. But the record does not reflect that Buyer has ever attempted to close. To hold otherwise would effectively create a second inspection period.

Under Florida contract law, courts are "powerless to rewrite[] the clear and unambiguous terms of a voluntary contract." *Universal Med. Inv. Corp. v. Mike Rollison Fence, LLC*, 331 So. 3d 242 (Fla. 1st DCA 2021) (quoting *Brooks v. Green*, 993 So. 2d 58, 61 (Fla. 1st DCA 2008)). "It is never the role of a trial court to rewrite a contract to make it more reasonable for one of the parties or to relieve a party from

what turns out to be a bad bargain." *Id.* Furthermore, equitable doctrines cannot be "asserted to expand" or rewrite clear contractual provisions. *Universal Prop. & Cas. Ins. Co. v. Qureshi*, 396 So. 3d 564 (Fla. 4th DCA 2024) (citing *Buckley Towers Condominium, Inc. v. QBE Insurance Corp.*, 395 Fed. App'x 659, 663 (11th Cir. 2010) (applying Florida law and holding that "[a]pplying the doctrine of prevention of performance in this case would impermissibly rewrite the insurance contract on the equitable theory that it would be too costly for [the insured] to comply with the terms of the agreement")).

Florida courts routinely enforce real estate contracts according to their plain terms and refuse to rewrite negotiated closing deadlines. In *Inlet Colony, LLC v. Martindale*, the Fourth District enforced a contractual outside closing deadline, rejecting arguments that would effectively extend or alter the parties' agreed-upon closing framework. The court held that where a contract provided that the buyer could cancel if closing did not occur by a specified date, the provision had to be enforced as written because courts are "not authorized to rewrite clear and unambiguous contracts" and must construe unambiguous language to mean "just what the language therein implies and nothing more." *Inlet Colony, LLC v. Martindale*, 340 So. 3d 492, 495-96 (Fla. 4th DCA 2022).

Buyer's request for a "contiguous, uninterrupted" Post-Inspection period effectively requires complete elimination of, and unlawful rewriting of, the parties' negotiated Outside Closing deadline, and replacing it with an indefinite right to delay closing until some future court-determined date. But Florida law strongly disfavors such restraints. The Florida Supreme Court has explained that the purpose of the rule against unreasonable restraints on alienation is "to ensure that property is reasonably available for development by prohibiting restraints that remove property from a beneficial use for an extended period of time." *Iglehart v. Phillips*, 383 So. 2d 610, 613 (Fla. 1980). Consistent with that principle, the Court held that "[t]he rule against unreasonable restraints on the use of property concerns restraints of such duration that they prevent the free alienation of property," and that "[t]he validity or invalidity of a restraint depends upon its long-term effect on the improvement and marketability of the property." *Id.* at 614; *see also Seagate Condo. Ass'n, Inc. v. Duffy*, 330 So. 2d 484, 485 (Fla. 4th DCA 1976) (Florida's rule against unreasonable restraints on alienation is grounded in the public policy that "the free alienability of property fosters economic and commercial development.").

## II. BUYER'S ARGUMENTS RELYING ON ALLEGED ACTS OR OMISSIONS DURING THE INSPECTION PERIOD ARE PRECLUDED

As set forth above, the Court has already determined that the parties are in the Post-Inspection Period. Buyer's request for what is essentially a new twenty-four-month Post-Inspection Period is therefore foreclosed by the Court's prior Declaratory Judgment.

On February 5, 2025, the Court expressly stated in its Order that "[t]he parties are now in the post-inspection period under the contract" and that the earnest money is "at risk" if Buyer does not close. D.E. 53 at ¶ 2; D.E. 54. That issue was actually litigated and decided. A declaratory judgment is "final and conclusive as to any issues which were actually litigated and determined in that proceeding," and "there is no reason to permit the relitigation of any issue actually litigated and necessary to the judgment rendered" therein. *Empire Fire & Marine Ins. Co. v. J. Transport, Inc.*, 880 F.2d 1291, 1296–97 (11th Cir. 1989). Buyer therefore cannot obtain relief predicated on the contrary premise that the Post-Inspection Period must begin anew upon entry of a future order, as doing so would require the Court to reach a result irreconcilable with its prior findings.

Because the Inspection Period has ended—by virtue of a binding judicial determination that has never been reversed or modified—any claim or argument

premised on Buyer's purported entitlement to additional diligence time, additional inspections, or additional rights that could have existed only during the Inspection Period, is barred as a matter of law.

### A. Buyer's Water and Sewer Arguments Fail as a Matter of Law Because Buyer Already Waived the Inspection Period

A central component of Buyer's Counterclaim is its request for a declaration that "adequate water and sewer has not yet been delivered to the Property" such that "Seller cannot avail itself of Section 5(b) of Exhibit A to the Contract." D.E. 15 at ¶ 59. Because the Trigger Notice was sent and Buyer elected to proceed and place its Earnest Money at risk, the water and sewer provisions of Section 5(b) do not apply. Buyer cannot rely on the alleged unavailability of water and sewer to delay the closing or to argue that the Outside Closing Date should be extended.

In the First Dec Action, the Court unequivocally ruled that the water and sewer provisions of Section 5(b)—which appear to allow Buyer to delay closing or obtain a return of its deposit if water and sewer capacity is unavailable—apply only "in the context of a situation where the trigger notice was not sent." MSJ Hr'g Tr. 85:7–8. The Court explained that this is "the only way you can harmonize all these provisions, particularly the at-risk, specific at-risk provision of the money being put up after the trigger notice." *Id.* at 85:9–11. The Court further explained that it would

"absolutely make no sense" for Buyer to be able to walk away and recover its deposit "because of some sewer issue at this point." *Id* at 85:13-23.

The Court reiterated the same principle in its *Order Denying Motion to Dismiss*, finding that "the buyer effectively assumed the risk that water and sewer capacity would not be available to the property at closing when it elected to proceed with the contract (and put its earnest money 'at risk') in response to the trigger notice." D.E. 22 at 7, n.2. The Court further stated that Buyer "will be hard-pressed to convince the Court that it is entitled to such a declaration based on the reasoning underlying the Court's rulings in the prior DJA action." *Id.*

### B. Seller's Alleged Interference with Diligence Activities Is Not Actionable

Buyer alleges in its Counterclaim that Seller "obstructed Buyer's attempts to undertake" the work necessary to obtain a development order and that Seller "told the City of Freeport that Buyer no longer had the Property under contract and was not authorized to submit requests in connection with the Property." D.E. 15 at ¶¶ 43–44. However, these supposed acts of interference implicate duties which existed, if at all, only during the Inspection Period. Buyer's arguments in this regard should therefore be cabined by the Court's determination that the parties are now in the Post-Inspection Period.

The Contract repeatedly places terms relating to governmental approvals, City cooperation, water/sewer capacity efforts, and development-related investigations within the Inspection Period. *See* Contract ¶ 9. And now that the Court has conclusively determined via the First Dec Action that the parties are in the Post-Inspection Period, Buyer can no longer rely on supposedly unresolved diligence matters as a basis to postpone closing. The Contract expressly ties those activities to the Inspection Period and does not provide that rezoning efforts, approval cooperation, or access-easement investigations survive indefinitely after that period expires.

Most crucially, Buyer has not, and cannot, allege that Seller has done anything to prevent Buyer from closing on its purchase of the Property—rather, Buyer attempts to relitigate diligence-phase issues that ceased to matter once the parties entered the Post-Inspection Period.

In sum, the Buyer's goal of obtaining development orders, and therefore the Seller's supposed role in that process, are no longer at issue after the close of the Inspection Period. Water and sewer availability to the property is not a condition to closing, and in any event, Buyer waived this issue. In sum, Buyer identifies no cognizable legal theory entitling it to the indefinite extension of the Outside Closing Date which it seeks.

### C. Buyer is Judicially Estopped from Taking a Contrary Position to that Maintained in the First Dec Action

Buyer's positions as set forth in the Counterclaim, are also barred by judicial estoppel because they are wholly inconsistent with the positions it advanced to obtain judgment in the First Dec Action. *In that suit, Buyer argued that the Contract was enforceable* because the Trigger Notice moved the parties into the Post-Inspection Period, placed Buyer's Earnest Money at risk, and left Buyer able to close even without sewer. *Now, Buyer takes exactly the opposite position* by arguing that the same water/sewer and diligence issues justify tolling, a new Post-Inspection Period, or delay of the Outside Closing Date.

Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Pegram v. Herdrich,* 530 U.S. 211, 227, n. 8 (2000). Indeed, the Supreme Court has expressly stated that:

> [W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.

*Id.* (citing *Davis v. Wakelee,* 156 U.S. 680, 689 (1895)). The Supreme Court identified three principal considerations: whether the later position is "clearly inconsistent" with the earlier position, whether the party "succeeded in persuading a court to accept that party's earlier position," and whether the party would derive an unfair advantage or impose an unfair detriment if not estopped. *Id.* at 750–51.

The Court should not permit Buyer to use one position to preserve the Contract and a contrary position to avoid closing under it. Buyer's prior position was not abstract; it was central to the Court's harmonization of the Contract. The Court explained that the at-risk deposit provision was "a critical component" of making the Contract valid, and that if Buyer could walk away later because of sewer issues and recover its money, the Court would have "a much more favorable view" of Seller's argument that the Contract was an indefinite option. MSJ Hr'g Tr. 85:13-25, 86:1-6. Thus, Buyer cannot now ask the Court to adopt the premise the Court expressly rejected.

Moreover, at the summary-judgment hearing in the First Dec Action, Buyer's counsel expressly argued that "the contract allows the buyer to close even without sewer," that Buyer "can still move forward," "can still close," and "can still take down the property without the sewer." MSJ Hr'g Tr. 12:20-25. Buyer's counsel further stated that "there is no requirement that sewer needs to be supplied to this

property in order to close." MSJ Hr'g Tr. 13:1-7. When the Court later stated that the Trigger Notice meant Buyer was effectively electing to close without water and sewer or forfeit its deposit, Buyer's counsel responded: "I don't necessarily disagree with Your Honor's reading." MSJ Hr'g Tr. 14:15-25.

This case is directly analogous to *New Hampshire v. Maine.* There, the parties disputed the meaning of the phrase "Middle of the River" in a 1740 boundary decree. In prior litigation, New Hampshire advocated a particular interpretation of that phrase, persuaded the Supreme Court to accept that interpretation, and obtained a favorable consent judgment based upon it. Years later, New Hampshire sought to advance a different interpretation of the same language in order to obtain additional territory and strategic advantage. The Supreme Court held that judicial estoppel barred the new position, explaining that New Hampshire had "convinced this Court to accept one interpretation" and could not later "urge[] an inconsistent interpretation to gain an additional advantage." *New Hampshire v. Maine*, 532 U.S. at 755.

Here, as in *New Hampshire v. Maine*, Buyer previously advanced a specific interpretation of the operative language, persuaded the Court to adopt that interpretation, and obtained a favorable judgment based upon it. Just as the Supreme Court refused to allow New Hampshire to reinterpret "Middle of the River" after successfully obtaining a judgment based on a contrary interpretation, the Court here

must likewise refuse Buyer's request to reinterpret the Contract after convincing the Court to adopt its prior interpretation in the First Dec Action.

Moreover, permitting Buyer's argument would allow it to derive an unfair advantage, and impose an unfair detriment on Seller. Having prevailed in the First Dec Action, Buyer successfully preserved its right to purchase the Property at a price negotiated nearly five years ago. Buyer now seeks to indefinitely delay closing while retaining the benefit of the bargain. If Buyer is ready, willing, and able to close (something that Seller seriously doubts), then it is choosing to delay performance while Seller remains deprived of the use and value of the purchase proceeds. If Buyer is not ready, willing, and able to close, then Seller is being hamstrung, because the Property remains tied up for the benefit of a purchaser that cannot presently and may never be able to perform, and Seller is prevented from realizing the value of its Property elsewhere. In either scenario, Buyer retains all of the upside and flexibility, while Seller bears all of the risk and consequence of delay.

**D. Alternatively, Buyer's Statements that Water and Sewer are not Required for Closing Constitute a Judicial Admission**

Even if the Court declines to apply judicial estoppel, Buyer should not be permitted to avoid summary judgment by recasting water and sewer issues as a disputed question of fact. To the extent Buyer contends that water and sewer availability, or Seller's conduct relating thereto, creates a factual dispute precluding

summary judgment, Buyer's prior statements made at the summary judgment hearing during the First Dec Action constitute binding judicial admissions.

Judicial admissions are "formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them." *Langdale Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Penn.*, 110 F. Supp. 3d 1285, 1293–94 (N.D. Ga. 2014), *aff'd,* 609 Fed. Appx. 578 (11th Cir. 2015) (internal citations omitted). Such admissions must be "clear, deliberate, and unequivocal factual assertions" and can include those made "orally in trial or court proceedings." *Id.* citing *In re Malia,* No. 09–42273, 2012 WL 909738, *2 (Bkrtcy. N.D. Ga. Feb. 8, 2012). "Statements made by an attorney during oral argument are binding judicial admissions and may form the basis for deciding summary judgment." *Jadael Inc. v. Elliott*, No. 6:05-CV-1623-ORLDAB, 2007 WL 2480387, at *11 & n. 12 (M.D. Fla. Aug. 29, 2007); *see also Crowe v. Coleman*, 113 F.3d 1536, 1542 (11th Cir. 1997); *McCaskill v. SCI Mgmt. Corp.*, 298 F.3d 677, 680 (7th Cir. 2001).

Here, Buyer's counsel repeatedly and unequivocally represented to the Court that "the contract allows the buyer to close even without sewer," that Buyer "can still close," and that "there is no requirement that sewer needs to be supplied to this property in order to close." MSJ Hr'g Tr. 12:20–25, 13:1–7. Those statements were clear, unequivocal, and deliberate representations, and Buyer cannot now

manufacture a factual dispute by contradicting the same representations it made to the Court in the First Dec Action.

## III. WITHOUT WAIVER OF THE POSITIONS SET FORTH IN SELLER'S COMPLAINT, THE LATEST POSSIBLE OUTSIDE CLOSING DATE BECAME FIXED FOLLOWING COURT'S ORDER RESOLVING THE FIRST DEC ACTION

Seller does not waive its primary position that the Inspection Period ended on July 17, 2023 (the date of Buyer's Response to the Trigger Notice), making the Outside Closing Date July 17, 2025. However, if the Court determines that some portion of the Post-Inspection Period should be excluded based upon Seller's prior litigation position, the Court has already identified the only record-supported alternative calculation: October 21, 2026. D.E. 22 at 9 n.5. Specifically, the Court observed even assuming the truth Buyer's allegations of interference occurring before February 2025, "it is hard to see how the buyer would not have to close by October 21, 2026—which is the end of a 24-month period commencing on the date the buyer responded to the trigger notice and excluding the time between August 2023 and February 2025" *Id.*

Accordingly, even under Buyer's most favorable view of the facts, the Outside Closing Date cannot extend beyond October 21, 2026. The record simply does not support any continuing interference by Seller after entry of judgment in the First Dec

Action, and Buyer identifies no basis to extend the Closing Date beyond the date already recognized by the Court.

Notwithstanding the foregoing, *the absolute latest possible Outside Closing Date* is 24 months after the Court entered judgment in the First Dec Action on February 5, 2025. The Court clearly and unequivocally declared that "[t]he parties are now in the post-inspection period under the contract." D.E. 54. Moreover, Buyer's counsel even agreed in their April 21, 2025 letter correspondence. *See* D.E. 14-4 ("Since the Declaratory Judgment establishing that the parties are in the "post-inspection" phase of the Agreement was filed on February 5, 2025, the first closing must therefore occur no later than Friday, February 5, 2027"). Accordingly, under any conceivable interpretation of the Contract, Buyer is not entitled to a closing date beyond February 5, 2027.

## CONCLUSION

In light of the foregoing, the Court is presented with a pure question of law: What is the latest possible Outside Closing Date under the Contract? The answer, as a matter of law, is 24 months from the expiration of the Inspection Period. Even under Buyer's most favorable interpretation of events, and ignoring fundamental principles of Florida law, the Outside Closing Date cannot be later than 24 months from February 5, 2025. Accordingly, any argument by Buyer premised on a closing

date beyond February 5, 2027 must be rejected, and summary judgment should be entered in Seller's favor. For the foregoing reasons, Seller respectfully requests that the Court:

(i) grant summary judgment in Seller's favor on Count I of Seller's Complaint and rule that:

a. the Outside Closing Date is either July 17, 2025, or August 16, 2025, and such date shall not be tolled or extended based on equitable principles; *or alternatively*

b. if the Court finds that the Outside Closing Date is not one of the dates listed in subsection (i)(a) above, the Court should fix the date as October 21, 2026, or at the very latest, February 5, 2027

(ii) If, at the time the Court issues its order, the Outside Closing Date as determined by the Court is a date that has already passed, the Court should find that Buyer has materially breached the Contract by failing to close by the Outside Closing Date and, thus, grant summary judgment in favor of Seller on Count II of the Complaint for breach of contract and find that Seller shall retain all deposits Buyer made under the Contract;

(iii) If, at the time the Court issues its order, the Outside Closing Date as determined by the Court is a date that has *not* passed, the Court should rule that if Buyer fails to close by the Outside Closing Date such failure shall constitute a material breach by Buyer, the Contract shall be deemed terminated, and Seller shall retain all deposits Buyer made under the Contract;

(iv) grant summary judgment in favor of Seller on Count I of Buyer's Counterclaim and rule that:

a. Buyer is not entitled to a contiguous, uninterrupted 24-month Post-Inspection Period that will expire 24 months after the Court enters an order to such effect and

b. the Post-Inspection Period or Outside Closing Date shall not be tolled or extended based on equitable principles or Section 5(b) of the Contract.

(v) award Seller its attorneys' fees and costs under the Contract; and

(vi) grant such other and further relief as the Court deems just and proper.

***[Signature block and Certificate of Service appear on the following page.]***

Respectfully submitted,

**RENNERT VOGEL MANDLER & RODRIGUEZ, P.A.**
*Attorneys for Plaintiff/Counter Defendant, 331 Freeport Partners, LLC*
Miami Tower, Suite 2900
100 S.E. Second Street
Miami, Florida 33131
Telephone (305) 577-4177
servicerobertstein@rvmrlaw.com
servicelaurenwhaley@rvmrlaw.com
servicecatherinewachtell@rvmrlaw.com

By: */s/ Robert M. Stein*
Robert M. Stein, Esq.
Florida Bar No. 93936
Lauren Kain Whaley, Esq.
Florida Bar No. 88670
Catherine L. Wachtell, Esq.
Florida Bar No. 1037182

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 9, 2026, a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

By: */s/ Robert M. Stein*
Robert M. Stein, Esq.